UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KANAY MUBITA,<br><br>                  Plaintiff,<br><br>    v.<br><br>MOSCOW CITY POLICE DEPARTMENT POLICE CHIEF DANIEL WEAVER, ASSISTANT CHIEF DAVID DUKE, OFFICER PAUL KWAITKOWSKI,<br><br>                  Defendants. | Case No. 1:07-cv-00549-BLW<br><br>**ORDER** |

Before the Court is Defendants' Motion for Summary Judgment (Docket No. 48). The Court finds that oral argument is not necessary to the decisional process, and will thus consider the motion without a hearing. For the following reasons, the Court will grant Defendants' motion.

## BACKGROUND

Plaintiff Kanay Mubita makes claims relating to his treatment by Defendants during the investigation and prosecution of charges that Mubita violated Idaho Code § 39-608 ("Transfer of body fluid which may contain the HIV virus"). During the course of the investigation, police officers determined that Mubita had many additional victims who were likely unaware of their current HIV status. Citing concerns for public safety,

Defendant Daniel Weaver issued a press release on December 8, 2005, regarding Mubita's arrest on the preceding. *Exhibit A to Affidavit of Daniel Weaver* (Docket No. 48-3). The press release included Mubita's name, a picture and his physical description. *Id*. The release also stated the crime for which Mubita had been arrested and asked that anyone who may have had sexual contact with him to call the Moscow Police Department. *Id*.

Mubita claims that Defendants created flyers, apparently of the same press release, and posted them in bars, nightclubs, stores, various businesses and on power poles around the city of Moscow. Defendants admit to having created the press release, but deny that the distributed it through the community as flyers. In response to discovery requests in the criminal case against Mubita, the press release was disclosed to his criminal defense attorney on December 21, 2005. *Affidavit of Michelle M. Evans* (Docket No. 48-5). Mubita initiated this action on December 29, 2007. *See Order*, 2 (Docket No. 12).

On February 23, 2009, the Court ordered that Mubita may proceed only with his Fourteenth Amendment right to privacy claim. *Order* (Docket No. 12). In his *Amended Complaint*, *Response to Defendants' Motion*, *Sur-reply*, *Affidavit in Support of Sur-Reply*, and *Affidavit Clarifying the Facts* (Docket Nos. 9, 50, 54, 56 and 58), Mubita includes the same challenges to his original conviction that were stayed by the *Initial Review Order*. (Docket No. 5). These claims will also be dismissed.

## ANALYSIS

1. **Statute of Limitation**

The statute of limitation period for filing a civil rights suit is the statute of limitation period for personal injuries in the state where the claim arose. *Wilson v. Garcia*, 471 U.S. 261 (1985). In Idaho, the statute of limitation for personal injuries is two years. I.C. § 5-219.

The Court uses federal law to determine when a claim accrues. *Elliott v. Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994). The Ninth Circuit has determined that a claim accrues when the plaintiff knows, or should know, of the injury that is the basis of the cause of action. *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Under the "discovery rule," the statute begins to run once a plaintiff knows of his injury and its cause. *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986). Under the discovery rule, a plaintiff "must be diligent in discovering the critical facts," or his claim will be barred if he "should have known in the exercise of due diligence." *Bibeau v. Pacific Northwest Research Foundation*, 188 F.3d 1105, 1108 (9th Cir. 1999).

A claimant may file a lawsuit beyond the statute of limitation deadline if he can show that his statute of limitation should have been tolled (or stopped) for a certain period of time during the deadline period within which he should have filed the lawsuit. In a civil rights case, state tolling provisions apply unless important federal policy will be undermined. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464-65 (1975).

Here, the clock began running on Mubita's claim on December 21, 2005 – the date Mubita's defense attorney received discovery which included the press release. "In our

system of representative litigation each party is . . . considered to have notice of all facts, notice of which can be charged upon the attorney." *Garcia v. I.N.S.*, 222 F.3d 1208 (9th Cir. 2000) (internal citations omitted).

The Court previously determined that Mubita filed his claim on December 29, 2007. This falls eight days beyond the statute of limitation deadline. Even if Mubita is given the benefit of the "mailbox rule," the claim was late and the action is barred.

**2. 14th Amendment Claims**

Even if it were timely filed, Mubita's claim would be dismissed nonetheless. Individuals have a constitutional right to avoid disclosure of personal medical information. *See Walen v. Roe*, 429 U.S. 589, 598-99 (1977); *see also Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir.2004). This right is not absolute, however. "[I]t is a conditional right which may be infringed upon a showing of proper governmental interest." *Tucson*, 379 F.3d at 551. A court looks at the following factors in determining whether an individual's privacy interest outweighs the government interest in disclosure: (1) the type of information involved; (2) the potential for harm in any subsequent non-consensual disclosure; (3) the adequacy of safeguards to prevent unauthorized disclosure; (4) the degree of need for access to disclosing such information; and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access/disclosure. *Id*.

In this case, information related to Mubita's arrest, his positive HIV status, and that the Moscow Police were seeking other possible victims was communicated in a press

release.  According to Defendants, "[t]he press release was issued because there was substantial concern for public safety based on the fact that Moscow is a University town with a large student population . . . and we believed that there was a high risk that the disease would continue to be spread." *Affidavit of Daniel Weaver*, 2-3 (Docket No. 48). Defendants provide that the press release was issued in standard fashion and neither they nor anyone associated with the Moscow Police Department distributed the press release as a flyer, as asserted by Mubita.  Defendants also point out that as a result of the information received from the release, "the Moscow Police Department interviewed fourteen potential victims and several additional witnesses," resulting in Mubita being charged with "an additional twelve counts of violating Idaho Code § 39-608." *Id*.

Mubita maintains that he is not HIV positive.  However, this is a collateral question barred by *Heck*.  *See infra Section 3*.  Rather, the underlying issue is if the content of the press release violated Mubita's right to privacy.  Generally, in reaching this question, the Court is required to "engage in the delicate task of weighing competing interests." *United States v. Westinghouse*, 638 F.2d at 578.  However, Defendants argue that the content of the press release pertained exclusively to Mubita's arrest, and should, thus, be considered public knowledge.  This, in turn severely limits the privacy rights afforded by the Constitution.

There is no dispute that press release contained highly sensitive and normally private information.  However, because the publication only included details of Mubita's arrest – which was itself a matter of public record – the constitutional right to privacy

does not extend to Mubita here. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975). "The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions ... are without question events of legitimate concern to the public . . .." *Id*. "Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records . . .." Moreover, Defendants have adequately demonstrated a compelling interest militating towards the release the information, even when balanced against Mubita's interest in keeping his HIV status private. Put simply, under the circumstances presented here, Defendants' reasons for the disclosure of Mubita's HIV status are compelling. The fact there were at least eleven additional victims, who themselves may have been spreading the disease, illustrates a pressing need to identify who may have been exposed to the virus by Mubita.

### 3. *Heck v. Humphrey*

The lion's share of Mubita's amended complaint, as well as his responses to Defendants' motion for summary judgment, are indirect challenges to his criminal conviction. The Court has already held that Plaintiff may not make these challenges in a civil rights action.

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that where a favorable verdict in a civil rights action would necessarily imply the invalidity of a plaintiff's conviction, he must first prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state

tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* As a result, "a claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* Mubita filed a separate petition for writ of habeas corpus, Kanay Mubita v. Lynn Smith, 1:08-cv-00310-BLW, which is the proper forum to challenge his state court conviction.

## Order

Accordingly, the Court orders:

1. Defendants' Motion for Summary Judgment (Docket No.48) is GRANTED. All of Plaintiff's claims are DISMISSED.

DATED: **March 16, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge